UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

KEVIN WRIGHT,

                            Plaintiff,

         - against -

UNDERCOVER OFFICER #84,

                         Defendant.

-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/22/2018

15-CV-4498 (VSB)

**OPINION & ORDER**

Appearances:

Jessica Massimi
The Law Offices of Michael S. Lamonsoff, PLLC
New York, NY
*Counsel for Plaintiff*

Melanie Speight
Kavin Suresh Thadani
New York City Law Department
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Kevin Wright ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against Undercover Officer #84 ("Defendant" or "UC 84") alleging claims for false arrest, malicious prosecution, and denial of the right to a fair trial. Before me is Defendant's motion for summary judgment on all of Plaintiff's claims. (Doc. 52.) Because there is no genuine dispute of material fact and Defendant is entitled to judgment as a matter of law with regard to Plaintiff's malicious prosecution and denial of fair trial claims, Defendant's motion is GRANTED as to those claims. Because there is a question of fact as to whether there was probable cause to arrest Plaintiff, Defendant's motion is DENIED as to Plaintiff's false arrest claim.

## I.  **Background**[1]

On November 12, 2014, UC 84 was working as a primary undercover conducting buy and bust operations in the vicinity of East 6th Street and Avenue D in Manhattan.  (Pl.'s 56.1 ¶ 1.)[2]  A buy and bust operation is a short-term operation during which undercover officers, working with "ghost" members of a field team, go to certain locations where narcotics have been sold in the past and attempt to purchase narcotics.[3]  (*Id.* ¶ 2.)  As the primary undercover, UC 84 was tasked with purchasing narcotics from individuals selling them in the neighborhood.  (*Id.* ¶ 3.)  At approximately 4:30 p.m., UC 84 encountered Plaintiff.  (*Id.* ¶ 6.)  Certain subsequent events relating to the interaction between UC 84 and Plaintiff are in dispute.

UC 84 contends that he observed Plaintiff from a distance engaging in conversation with an individual later identified as Robert Joiner ("Joiner").  (*Id.* ¶ 7.)  Joiner purportedly called out to UC 84 and waved him over, at which point UC 84 walked over to Joiner and Plaintiff.  (*Id.* ¶¶ 9, 10.)  In the presence of Plaintiff, UC 84 indicated that he wished to buy heroin.  (*Id.* ¶ 11.)  Joiner informed UC 84 that he could only supply crack.  (*Id.* ¶¶ 12, 13.)  UC 84 agreed to purchase the crack and gave Joiner twenty dollars in pre-recorded buy money.  (*Id.* ¶¶ 14, 15.)  Joiner then instructed UC 84 to wait for him and walked away.  (*Id.* ¶¶ 17, 18.)  UC 84 waited with Plaintiff for Joiner to return.  (*Id.* ¶ 20.)  While they waited, Plaintiff and UC 84 had a conversation.  (*Id.* ¶¶ 21–23.)  When Joiner returned, he handed UC 84 one bag of crack.  (*Id.*

---

[1] The facts stated in this section are undisputed unless otherwise indicated.

[2] "Pl.'s 56.1" refers to Plaintiff's Response to Defendant's Rule 56.1 Statement, dated September 18, 2017 ("Plaintiff's Responsive 56.1").  (Doc. 61.)  In compliance with my Individual Rules, Plaintiff's Responsive 56.1 reproduces each entry from Defendant's Statement of Uncontested Material Facts Pursuant to Local Civil Rule 56.1, dated July 18, 2017, (Doc. 54), and sets out Plaintiff's response directly beneath it.  Accordingly, references herein to individual paragraphs are to Defendant's statements, Plaintiff's statements, or some combination thereof.

[3] "In a buy and bust operation, 'ghost' undercovers discreetly follow the primary undercover and are responsible for relaying, by radio, descriptions of the individuals that a primary undercover interacts with as well as the primary undercover's location, to members of the field team."  (Def.'s 56.1 ¶ 4.)  "Def.'s 56.1" refers to Defendant's Statement of Uncontested Material Facts Pursuant to Local Civil Rule 56.1, dated July 18, 2017.  (Doc. 54.)

¶¶ 25, 26.) UC 84 then "put over a positive buy signal, which is a physical gesture" indicating to observing members of the field team that narcotics had been purchased and the deal was "done." (*Id.* ¶¶ 27, 28.)

Plaintiff's version of the events differs. According to Plaintiff, UC 84, without being waved over, approached Joiner, who was initially alone, and asked Joiner if he knew where to get heroin. (*Id.* ¶¶ 27, 28.) UC 84 was with a woman who he introduced as his girlfriend. (*Id.* ¶ 74.) Joiner informed UC 84 that he could not get him heroin and UC 84 and the woman walked away. (*Id.* ¶ 76.) Soon thereafter, Plaintiff ran into Joiner while Plaintiff was walking to the bus stop on his way to an appointment with his chiropractor. (*Id.* ¶¶ 79, 80.) Plaintiff had not planned to run into Joiner. (*Id.* ¶ 81.) Joiner asked Plaintiff for change and Plaintiff entered a nearby bodega in order to make change. (*Id.* ¶ 83.) While Plaintiff was in the bodega Joiner and UC 84 began speaking again. (*Id.* ¶¶ 84, 85.) After Plaintiff exited the bodega, UC 84 "approached Plaintiff" and "came over to where Plaintiff was standing at the bus stop." (*Id.* ¶¶ 86, 87.) Plaintiff was standing with Joiner at the time. (*Id.* ¶ 88.) Joiner and UC 84 spoke about crack, but Plaintiff did not speak to UC 84 about any drugs. (*Id.* ¶ 89.) Joiner then left the area. (*Id.*) After Joiner left, Plaintiff repeatedly "walked away" from UC 84 and told UC 84 that Plaintiff had nothing to do with what was going on between UC 84 and Joiner and that he "didn't want to be involved with none of that stuff." (*Id.* ¶¶ 91–93.)

It is undisputed that Plaintiff and Joiner were taken into custody and arrested shortly after their encounter with Defendant. (*Id.* ¶¶ 30, 32, 33.) Following the arrest, it was discovered that Plaintiff had two open arrest warrants. (*Id.* ¶¶ 37, 38.) On November 13, 2014 Plaintiff was arraigned and pleaded guilty to charges associated with the outstanding warrants. (*Id.* ¶ 39.) The New York County District Attorney's Office (the "NYDAO") prosecuted Plaintiff based on the

alleged sale of a controlled substance to UC 84. (*Id.* ¶ 53.) On November 18, 2014, a Grand Jury indicted Plaintiff on that charge. (*Id.* ¶ 55.) Plaintiff proceeded to trial during which UC 84 testified as to his version of the events surrounding Plaintiff's arrest. (*Id.* ¶ 59.) Joiner was a co-defendant in the criminal trial. (*Id.* ¶¶ 58, 69.) Unlike Plaintiff, Joiner testified at the criminal trial. (*Id.* ¶ 62.) On April 8, 2015, a jury acquitted Plaintiff and Joiner. (*Id.* ¶ 60.)

## II.   **Procedural History**

Plaintiff commenced this action by filing his Complaint on June 10, 2015 against UC 84 and the City of New York (the "City"). (Doc. 1.) On February 21, 2017, UC 84 and the City submitted a letter requesting a pre-motion conference in anticipation of their motion for summary judgment. (Doc. 36.) On February 24, 2017, Plaintiff submitted a letter requesting leave to amend his complaint to add a denial of fair trial claim. (Doc. 37.) On February 27, 2017, I ordered Plaintiff to submit his proposed amended complaint and directed UC 84 and the City to submit a letter in response to Plaintiff's request for leave to amend. (Doc. 38.) On February 27, 2017, Plaintiff filed his proposed amended complaint, (Doc. 39), and on March 6, 2017, UC 84 and the City submitted their letter objecting to Plaintiff's request for leave to amend, (Doc. 40). I directed the parties to appear for a conference on April 7 to discuss their anticipated motions. (Doc. 41.) On March 8, 2017, I so ordered the parties' Stipulation and Order of Voluntary Partial Dismissal and Withdrawal with Prejudice dismissing all claims asserted against the City. (Doc. 43.) At the April 7, 2017 conference, I granted Plaintiff's request to file an amended complaint, which Plaintiff filed against UC 84 on April 11, 2017, (Doc. 44.) Defendant filed his Answer on May 1, 2017. (Doc. 45.)

Defendant filed his motion for summary judgment on July 18, 2017, (Doc. 52), along with a memorandum of law in support, (Doc. 53), Defendant's Statement of Uncontested

Material Facts Pursuant to Local Civil Rule 56.1, (Doc. 54), and declaration of Melanie Speight

with exhibits, (Doc. 55). On September 18, 2017, Plaintiff filed his memorandum of law in

opposition to Defendant's motion, (Doc. 60), Plaintiff's Response to Defendant's Rule 56.1

Statement, (Doc. 61), and declaration of Jessica Massimi with exhibits, (Doc. 62). On October 2,

2017 Defendant filed his reply memorandum of law in further support of the motion for

summary judgment, (Doc. 63).

### III. <u>Legal Standards</u>

#### A. *Summary Judgment*

Summary judgment is appropriate when "the parties' submissions show that there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P.

56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit

under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be

counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of

establishing that no genuine factual dispute exists. *Id.* at 256. If satisfied, the burden shifts to

the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial,"

*id.*, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long

Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). To defeat a summary judgment motion, the

nonmoving party "must do more than simply show that there is some metaphysical doubt as to

the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by . . . citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other

materials . . . ."  Fed. R. Civ. P. 56(c)(1).  In the event that "a party fails . . . to properly address

another party's assertion of fact as required by Rule 56(c), the court may," among other things,

"consider the fact undisputed for purposes of the motion" or "grant summary judgment if the

motion and supporting materials—including the facts considered undisputed—show that the

movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

Additionally, in considering a summary judgment motion, a court must "view the

evidence in the light most favorable to the non-moving party and draw all reasonable inferences

in its favor, and may grant summary judgment only when no reasonable trier of fact could find in

favor of the nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal

citations and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587.  "[I]f there is any

evidence in the record that could reasonably support a jury's verdict for the non-moving party,"

summary judgment must be denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d

Cir. 2002).

Finally, on a summary judgment motion, courts may consider "only evidence that would

be admissible at trial."  *Nora Beverages v. Perrier Grp. of Am.*, 164 F.3d 736, 746 (2d Cir.

1998); *see also* Fed. R. Civ. P. 56(c).  If a court excludes witness testimony as inadmissible

under the Federal Rules of Evidence, "the summary judgment determination is made on a record

that does not include that evidence."  *Raskin v. Wyatt Co.*, 125 F.3d 55, 66–67 (2d Cir. 1997);

*see also Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d

Cir. 1985) (concluding that a party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial" and refusing to consider such evidence). The burden is on the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated. *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 46 (2d Cir. 2015) (quoting Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment).

## B. *Section 1983*

Section 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. In other words, "[t]o state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1703 (2015). Section 1983 does not establish substantive rights, but provides a means of redress for the deprivation of rights established elsewhere. *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (citation omitted).

## IV. <u>Discussion</u>

In support of Plaintiff's claims that he was falsely arrested, subjected to malicious prosecution, and denied his fair trial rights, Plaintiff contends that UC 84 presented a false narrative to the NYDAO when he: (1) "falsely alleged verbally and in documents that Plaintiff engaged in a drug-related conversation with him," (2) "failed to disclose that Plaintiff was not

present when UC 84 initially approached Mr. Joiner," (3) "falsely alleged that UC 84 was approached by Plaintiff, rather than the other way around," and (4) "failed to disclose that Plaintiff repeatedly walked away from UC 84 at the bus stop, telling him that he was not a drug dealer." (Pl.'s Opp. 1.)[4] Defendant seeks dismissal of Plaintiff's claims on various grounds, including that: (1) Plaintiff's arrest and prosecution were supported by probable cause, (2) Defendant's actions were not motivated by actual malice, and (3) Plaintiff's self-serving denials are insufficient to establish a claim for denial of the right to a fair trial. Defendant also contends that Joiner's criminal trial testimony—which Plaintiff relies on in support of his claims—is inadmissible in this civil action. I address the arguments pertaining to each of Plaintiff's claims below. Since the admissibility of Joiner's testimony impacts Plaintiff's other claims, I first address that issue.

### A.    *Admissibility of Criminal Trial Testimony*

In support of his claims, and in opposition to the motion for summary judgment, Plaintiff relies on certain portions of Joiner's criminal trial testimony, including the admission that Joiner "helped UC 84 obtain crack cocaine and that he knew this was illegal," and the fact that in the course of his testimony Joiner "never implicated [Plaintiff] in Mr. Joiner's effort to obtain drugs for Defendant UC 84," and "corroborated Plaintiff's claims that [Plaintiff] was not involved in obtaining drugs for UC 84, when [Joiner] testified that [Plaintiff] did not speak to UC 84 about drugs, but Mr. Joiner did."[5] (Pl.'s Opp. 5–6; *see generally* Pl.'s 56.1.) The parties agree that

---

[4] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, filed on September 18, 2017. (Doc. 60.)

[5] Both parties assert that they do not know Joiner's current whereabouts. (*See* Def.'s Mem. 8–9; Pl.'s Opp. 5.) Plaintiff contends that Defendant's counsel, the Corporation Counsel for the City of New York—in conjunction with the resources of the New York Police Department—has ample resources to locate Joiner and has the burden to do so since Defendant listed Joiner as a witness in his initial disclosures. (*See* Pl.'s Opp. 11–12.) However, Federal Rule of Civil Procedure 26(a) specifies that a party must initially disclose the names of any witnesses that the party may use to support its claims or defenses so as to not "sandbag" his or her adversary, and does not contemplate an obligation to locate such individuals for trial. *See Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004);

Joiner's testimony constitutes hearsay and is inadmissible in this proceeding unless it falls under one of the exceptions to the rule against hearsay. (*See* Def.'s Mem. 8; Pl.'s Opp. 6; *see also O'Brien v. City of Yonkers*, No. 07-CV-3974 (KMK)(LMS), 2013 WL 1234966, at *7 (S.D.N.Y. Mar. 22, 2013) (adopting Report and Recommendation and noting that testimony of a nonparty witness that was given at a prior hearing is, when offered for its truth, hearsay).)[6] Plaintiff contends that the requisite portions of Joiner's testimony are admissible here pursuant to Federal Rules of Evidence 804(b)(3) and 807. (Pl.'s Opp. 5–6.) I disagree.

### 1. Rule 804(b)(3)

Pursuant to Federal Rule of Evidence 804(b)(3), a "statement against interest"—which is defined as "[a] statement that a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability"—is not excluded by the rule against hearsay if the declarant is unavailable as a witness. Plaintiff claims that because Joiner admitted to helping UC 84 obtain crack, thereby implicating himself in illegal activity, his testimony constitutes an exception to the general rule that hearsay statements are inadmissible.

Rule 804(b)(3) is "founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson v. United States*, 512 U.S. 594, 599 (1994).

---

*Alfano v. Nat'l Geographic Channel*, No. CV 06-3511(NG)(JO), 2007 WL 2982757, at *2 (E.D.N.Y. Oct. 5, 2007). Plaintiff's claim is equally unavailing because, as Defendant points out, Plaintiff also listed Joiner in his initial disclosures and is the party seeking to rely on Joiner as a witness. (*See* Def.'s Reply 3–4.) "Def.'s Reply" refers to the Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment, filed on October 2, 2017. (Doc. 63.)

[6] "Def.'s Mem." refers to the Memorandum of Law in Support of Defendant's Motion for Summary Judgment, filed on July 18, 2017. (Doc. 53.)

However, because the fact that "'a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts,' the court must examine each proposition in a statement to determine whether it was so inculpatory of [the declarant] as to assure that [the declarant] thought it was true." *United States v. Volpe*, 42 F. Supp. 2d 204, 214 (E.D.N.Y. 1999) (quoting *Williamson*, 512 U.S. at 599). The statement against interest exception does not allow admission of non-self-inculpatory statements, even if such statements are made within a broader narrative that is generally self-inculpatory. *See Williamson*, 512 U.S. at 599–601 (finding that Rule 804(b)(3) excepts from the general rule that hearsay statements are inadmissible only those declarations within a narrative that are individually self-inculpatory); *see also United States v. Zapata*, 356 F. Supp. 2d 323, 326 (S.D.N.Y. 2005) ("The justification underlying the hearsay exception—that people tend not to make self-inculpatory statements unless they believe them to be true—does not extend to statements concerning the roles of other individuals in the alleged crime, even when combined with self-inculpatory remarks.") (internal quotation marks omitted). In other words, a statement that is merely collateral to a self-inculpatory statement is not admissible under Rule 804(b)(3). *Williamson*, 512 U.S. at 600.

The essence of the testimony that Plaintiff relies on relates to Joiner's statements that (1) Plaintiff was not involved in the drug transaction between Joiner and UC 84, and (2) Plaintiff did not speak to UC 84 about obtaining drugs, rather than Joiner's admission that he helped UC 84 obtain crack. Because the statements related to Plaintiff are merely collateral to the self-inculpatory statements by Joiner evidencing his participation in an illegal drug transaction, Joiner's testimony regarding Plaintiff's role (or lack thereof) in the transaction is not admissible under Rule 804(b)(3).[7]

---

[7] Defendant also argues that Joiner's testimony does not fall under the hearsay exception set forth in Federal Rule of Evidence 804(b)(1). (Def.'s Mem. 8–10.) While Plaintiff failed to respond to this argument or otherwise address

## 2. Rule 807

Federal Rule of Evidence 807 contains a "residual exception" to the rule against hearsay. *Annunziata*, 2008 WL 2229903, at *7. Rule 807 allows for the admission of hearsay evidence if "(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party." *United States v. Bryce*, 208 F.3d 346, 350 (2d Cir. 1999). "Because Rule 807 is properly viewed as a 'safety-valve' to prevent injustice, it is to be used only rarely, and in exceptional circumstances and applies only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." *United States v. James*, No. 02 CR 0778(SJ), 2007 WL 1579977, at *3 (E.D.N.Y. May 31, 2007) (internal quotation marks omitted); *see also United States v. Mejia*, 948 F. Supp. 2d 311, 316 (S.D.N.Y. 2013) ("In examining whether a statement meets these criteria, the Second Circuit has noted that 'Congress intended that the residual hearsay exceptions be used very rarely, and only in exceptional circumstances.'") (quoting *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991)). "Because of these considerations, a district court has considerable discretion in determining admissibility under Rule 807." *James*, 2007 WL 1579977, at *3.

Plaintiff has failed to establish that the proffered testimony meets the Rule 807 criteria for

---

this exception to the hearsay rule, I will address it briefly. Rule 804(b)(1) articulates a hearsay exception for former testimony when a witness is unavailable. "In order to admit prior testimony under Rule 804(b)(1), the proponent has the burden to show by the preponderance of the evidence that (1) the witness is unavailable; (2) the party against whom the testimony is offered is the same as in the prior proceeding; and (3) that party had the same motive and opportunity to examine the witness." *Annunziata v. City of N.Y.*, No. 06 Civ. 7637(SAS), 2008 WL 2229903, at *7 (S.D.N.Y. May 28, 2008). With regard to the second factor, UC 84 was not a party to the criminal proceeding against Joiner and Plaintiff, and UC 84 cannot be considered equivalent to the NYDAO, the entity that brought the criminal case against Plaintiff and Joiner. *See id.* at *8 (concluding that the district attorney's office was not the same party as, or in privity with, the City of New York or an individual detective for purposes of Rule 804(b)(1)). Therefore, Joiner's former trial testimony is not admissible under Rule 804(b)(1).

admissibility. Under the first criteria, the proffered hearsay evidence must have circumstantial guarantees of trustworthiness equivalent to those that justify hearsay testimony under the other hearsay exceptions. *See Mejia*, 948 F. Supp. 2d at 316. As discussed above, *see supra*, the hearsay testimony at issue is not admissible under the recognized hearsay exceptions for statements or testimony provided by an unavailable witness, and therefore lacks the circumstantial guarantees of trustworthiness required by Rule 807. *See United States v. Jackson*, 335 F.3d 170, 179 (2d Cir. 2003) (finding that because non-party witness's statements lacked trustworthiness under Rule 804(b)(3), "the statements clearly lack equivalent circumstantial guarantees of trustworthiness required under Rule 807" (internal quotation marks omitted)); *Mejia*, 948 F. Supp. 2d at 317 (finding that proposed testimony lacked the circumstantial guarantees of trustworthiness because it was not analogous to recognized hearsay exceptions); *James*, 2007 WL 1579977, at *3–4 (finding that "because [defendant's] statements lack . . . trustworthiness under Rule 804(b)(3), the statements clearly lack equivalent circumstantial guarantees of trustworthiness required under Rule 807" (internal quotation marks omitted)); *cf. Annunziata*, 2008 WL 2229903, at *11 (finding that "the formalities of a trial, including the oath given to witnesses, the presence of a judge, and the transcription of testimony by a court reporter, provide sufficient guarantees of trustworthiness," but first finding that the same testimony was also admissible as a statement against interest under Rule 804(b)(3)).

Furthermore, Plaintiff has proffered no basis upon which to find that the probative importance element of Rule 807 is satisfied. Plaintiff has made no showing that there are no other witnesses available to testify—such as the members of the field team, including the ghost who observed the interactions between and among UC 84, Joiner, and Plaintiff—to the events in question. *See McGrory v. City of N.Y.*, No. 99 Civ. 4062 (LTSFM), 2002 WL 31388713, at *1

(S.D.N.Y. Oct. 22, 2002) (precluding statements under Rule 807 where plaintiff made no effort to depose or produce other witnesses who could testify to the question at issue). Likewise, the general purposes of the Federal Rules of Evidence and the interests of justice would not be best served by admission of the disputed testimony because the application of the residual exception in this case would abrogate the requirement in Rule 804(b)(1) that a party against whom prior sworn testimony is offered must have had an opportunity for cross-examination. *See Ragin v. Newburgh Enlarged City Sch. Dist.*, No. 10 Civ. 2797(JFK), 2011 WL 2183175, at *2 (S.D.N.Y. June 3, 2011). Thus, admission of Joiner's testimony is not appropriate under Rule 807.

For the reasons stated above, I may not and do not rely on Joiner's criminal trial testimony in analyzing the present motion.

## B. *False Arrest Claim*

### 1. Applicable Law

The elements of a claim for false arrest under § 1983 are "substantially the same as the elements of a false arrest claim under New York law." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks omitted). Under federal and state law, a plaintiff bringing a false arrest claim must demonstrate that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Id.* In determining whether an arrest was privileged, courts typically consider whether there was legal justification for the challenged arrest or, "in most cases, whether there was probable cause." *Marom v. City of N.Y.*, No. 15-cv-2017 (PKC), 2016 WL 916424, at *5 (S.D.N.Y. Mar. 7, 2016). Probable cause to arrest constitutes a "complete defense to an action for false arrest," even where a person is ultimately acquitted. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting

*Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Id.* "[A]n officer 'has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010)). In assessing probable cause, courts view the "totality of the circumstances." *Jenkins v. City of N.Y.*, 478 F.3d 76, 90 (2d Cir. 2007).[8]

Even where probable cause is lacking, "[a]n officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff." *Garcia*, 779 F.3d at 92 (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013)). The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317–18 (2d Cir. 1994) (internal quotation marks omitted). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could

---

[8] It is axiomatic that "[p]robable cause exists to arrest when an officer learns of an open arrest warrant." *Omor v. City of N.Y.*, No. 13-CV-2439 (RA), 2015 WL 857587, at *5 (S.D.N.Y. Feb. 27, 2015). Before Plaintiff's arrest was formally processed, the arresting officer learned that Plaintiff was the subject of two active warrants. (Pl.'s 56.1 ¶¶ 37, 38.) Consequently, Defendant argued in his motion that analysis of Plaintiff's false arrest claim should be limited to Plaintiff's initial seizure. (Def.'s Mem. 12–13.) In response, Plaintiff withdrew his claim for false arrest spanning the time between when the arresting officer discovered the warrants and the time that Plaintiff pled guilty related to those warrants at his arraignment. (Pl.'s Opp. 17.) Accordingly, I limit my analysis to the period of time prior to when the arresting officer discovered the outstanding warrants.

disagree on whether the probable cause test was met." *Garcia*, 779 F.3d at 92 (quoting *Zalaski*, 723 F.3d at 390); *see also Basinski v. City of N.Y.*, 192 F. Supp. 3d 360, 365 (S.D.N.Y. 2016). "'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 157 (2d Cir. 2013). "Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." *Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 271 (S.D.N.Y. 2010) (citation omitted).

## 2. Application

UC 84's account of Plaintiff's involvement in the transaction between UC 84 and Joiner fundamentally differs from the version proffered by Plaintiff. UC 84 contends that he initially observed Plaintiff from a distance engaging in conversation with Joiner and that Joiner waived UC 84 over to him. (Pl.'s 56.1 ¶¶ 7, 9.) UC 84 then informed Joiner, in the presence of Plaintiff, that he wished to buy heroin. (*Id.* ¶ 11.) Joiner, still in the presence of Plaintiff, informed UC 84 that he could supply crack and UC 84 agreed to purchase it. (*Id.* ¶¶ 11–13.) When Joiner left to retrieve the drugs, Plaintiff waited and conversed with UC 84 until Joiner returned. (*Id.* ¶¶ 17–18, 20–23, 25, 26.) UC 84 claims that, based on the perceived relationship between Plaintiff and Joiner—in which Joiner was comfortable waving over UC 84, offering UC 84 drugs in front of Plaintiff, and leaving UC 84 in Plaintiff's company while leaving to retrieve the drugs—"there was probable cause to believe that Mr. Joiner and plaintiff were working as a team, and that plaintiff was acting as a lookout, staying with [UC 84] and ensuring that the sale would be effectively completed." (Def.'s Mem. 13; Pl.'s 56.1 ¶¶ 7, 9–13.)

In contrast, Plaintiff claims that UC 84 initially approached Joiner while Joiner was

alone.  (Pl.'s Dep. 79:1-8, 82:1-25.)[9]  Plaintiff later ran into Joiner while Plaintiff was walking to the bus stop on the way to a doctor's appointment.  (*Id.* at 71:18-72:16.)  Joiner asked Plaintiff for change and Plaintiff entered a nearby bodega in order to obtain change and comply with the request.  (*Id.* at 81:7-14.)  Plaintiff left the bodega and UC 84 approached Plaintiff at the bus stop where Plaintiff was then standing with Joiner.  (*Id.* at 79:4-8, 81:19-82:14.)  Joiner spoke to UC 84 about obtaining narcotics and then left the area.  (*Id.* at 85:13-18.)  After Joiner left, Plaintiff repeatedly walked away from UC 84 and told UC 84 that he was not a drug dealer and was not interested in the apparent transaction occurring between Joiner and UC 84.  (*Id.* at 84:13-21, 85:7-18.)

Crediting Plaintiff's account and viewing all other evidence in his favor, including Plaintiff's insistence that he repeatedly attempted to walk away from UC 84 and was not part of the drug transaction, a reasonable jury could find that there was no probable cause or arguable probable cause to arrest Plaintiff.  *See Garnett v. City of N.Y.*, No. 13-cv-7083-GHW, 2014 WL 3950904, at *9 (S.D.N.Y. Aug. 13, 2014) (granting summary judgment on false arrest claim where officer's account of plaintiff's involvement in drug transaction differed from the version provided by plaintiff).  A reasonable juror could choose to accept Plaintiff's testimony over that of UC 84, particularly given the fact that UC 84 did not identify any evidence in the record that corroborates UC 84's version of the events.  *See id.*  Therefore, this sort of credibility determination should be left to a jury.  *See id.*

For the foregoing reasons, I find that a question of material fact exists concerning whether Plaintiff's arrest was supported by probable cause, and Defendant's motion for summary

---

[9] "Pl.'s Dep." refers to the transcript of the December 19, 2016 deposition of Kevin Wright, attached as Exhibit 1 to the Declaration of Jessia Massimi in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment.  (Doc. 62.)

judgment is denied with regard to Plaintiff's false arrest claim.

### C. *Malicious Prosecution Claim*

#### 1. Applicable Law

To establish a claim for malicious prosecution under § 1983, a plaintiff must show "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003); *see also O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996). In addition, the Second Circuit requires a plaintiff to show that there was "a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Washington v. Cty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004). As with a false arrest claim, a finding of probable cause is a complete defense to an action for malicious prosecution. *Garnett*, 2014 WL 3950904, at *9.

#### 2. Application

The parties do not contest that the criminal proceeding was terminated in Plaintiff's favor or that Plaintiff suffered a liberty restraint when he was incarcerated for several months prior to his acquittal. (*See* Def.'s Mem. 14; Pl.'s Opp. 17 n.4.) Even if Plaintiff could show that UC 84 initiated the prosecution against him, Plaintiff cannot establish a claim for malicious prosecution because he cannot demonstrate that the prosecution was initiated without probable cause or with malice.

A grand jury indictment creates a presumption of probable cause. This presumption may be overcome "only by evidence establishing that the police witnesses have not made a complete and full statement of the facts either to the grand jury or to the District Attorney, that they have misrepresented or falsified evidence, [or] that they have withheld evidence or otherwise acted in

bad faith." *Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 272 (S.D.N.Y. 2010) (citation omitted). A plaintiff bears the burden "to establish what occurred in the grand jury, and [ ] further establish that those circumstances warrant a finding of misconduct sufficient to erode the premise that the Grand Jury acts judicially." *Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004) (internal quotation marks omitted). Where a plaintiff's only evidence is his own version of events, such evidence amounts to nothing more than "mere conjecture and surmise that [the plaintiff's] indictment was procured as a result of conduct undertaken by the defendants in bad faith," and is insufficient to rebut the presumption of probable cause created by the indictment. *Savino*, 331 F.3d at 73 (noting that "the presumption of probable cause arising from an indictment applies only in causes of action for malicious prosecution [and not] false arrest actions" (internal quotation marks omitted)).

In *Boyd*, the Second Circuit established what has been referred to as the "competing testimony plus" standard to determine whether a plaintiff has rebutted the presumption of probable cause. *Brandon*, 705 F. Supp. 2d at 273 (citing *Boyd*, 336 F.3d at 72). At issue in *Boyd* was whether the plaintiff was arrested in his apartment and made an incriminating statement before being given his Miranda warnings, *Boyd*, 336 F.3d at 77, or whether, as the defendant officers testified, plaintiff was not arrested until he was outside the building, therefore rendering his statements admissible as the product of a noncustodial interrogation, *id.* at 74. The court noted that the post-arrest worksheet prepared by the police indicated that plaintiff was arrested inside his building and this corroboration of the plaintiff's account, or "plus factor," led the court to find a genuine issue of material fact as to the lack of probable cause. *Id.* at 78.

Plaintiff contends that UC 84 relayed a false narrative to prosecutors from the NYDAO and to the Grand Jury, including that Plaintiff engaged in a drug-related conversation and

transaction with UC 84. (*See* Pl.'s Opp. 20–21.) However, "where a plaintiff's only evidence to rebut the presumption of the indictment is his version of events, courts will find such evidence to be nothing more than mere conjecture and surmise that the plaintiff's indictment was procured as a result of conduct undertaken by the defendants in bad faith, which is insufficient to rebut the presumption of probable cause." *Brandon*, 705 F. Supp. 2d at 273 (internal quotation marks omitted). Plaintiff provides no corroborating evidence—other than the inadmissible excerpts of Joiner's criminal trial testimony, *see supra* Part IV.A—to support his claim and the allegations are therefore insufficient to overcome the presumption of probable cause arising from his indictment.

Plaintiff also cannot show that UC 84 was motivated by actual malice. This "does not require a plaintiff to prove that the defendant was motivated by spite or hatred, rather, it means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994). A lack of probable cause to prosecute "generally creates an inference of malice." *Boyd*, 336 F.3d at 78. In support of his claim that the criminal proceedings were initiated with malice, Plaintiff relies exclusively on his argument that probable cause to initiate the proceedings was lacking and provides no other evidence indicating that UC 84 acted with any improper motive. (*See* Pl.'s Opp. 21–22.) As discussed above, *see supra*, Plaintiff has failed to overcome the presumption of probable cause established by the Grand Jury's indictment. Accordingly, Plaintiff has failed to demonstrate that the criminal proceedings were initiated with malice.

Because there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law, Defendant's summary judgment motion is granted with respect to

Plaintiff's malicious prosecution claim.

### D.  *Denial of the Right to a Fair Trial Claim*

#### 1.  Applicable Law

"A fair trial claim is a civil claim for violations of a criminal defendant's Fourteenth Amendment due process rights."  *Fappiano v. City of N.Y.*, 640 F. App'x 115, 118 (2d Cir. 2016) (summary order).  To prevail on a denial of fair trial claim, a plaintiff must show that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."  *Jovanovic v. City of N.Y.*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.").  The deprivation need not be in the form of post-trial confinement.  *Soomro v. City of N.Y.*, 174 F. Supp. 3d 806, 815 (S.D.N.Y. 2016).  Nor is probable cause a defense to a denial of fair trial claim.  *See id.*  Moreover, "[t]he fact that allegedly fabricated evidence would be inadmissible at trial by itself is not a bar to the claim."  *Id.* at 816.  It is not necessary that the false information "be used at trial, or even that a trial ever take place—the claim accrues when the officer forwards the false information to the prosecutors."  *Garnett*, 2015 WL 1539044, at *4.

#### 2.  Application

Plaintiff bases his fair trial claim on the fact that UC 84 allegedly falsified the criminal Buy Report and fabricated statements he made to prosecutors.  (Pl.'s Opp. 24.)  In particular, Plaintiff claims that:  (1) "UC 84 falsely alleged verbally and in documents that Plaintiff engaged

in a drug-related conversation with him," (2) "UC 84 failed to disclose that Plaintiff was not present when UC 84 initially approached Mr. Joiner," (3) "UC 84 falsely alleged that UC 84 was approached by Plaintiff, rather than the other way around," and (4) "UC 84 failed to disclose that Plaintiff repeatedly walked away from UC 84 at the bus stop, telling him that he was not a drug dealer." (*Id.*)

As discussed above, Joiner's trial testimony must be excluded since it is inadmissible hearsay. *See supra* Part IV.A. Excluding that evidence, the only other evidence Plaintiff cites to support his claim that UC 84 misreported the occurrence of events is Plaintiff's own denial and account of the interaction. Plaintiff's claims are "unsubstantiated by any other direct evidence," *Jeffreys v. City of N.Y.*, 426 F.3d 549, 555 (2d Cir. 2005), and therefore insufficient to support his claim, *see Fappiano*, 640 F. App'x at 118–19 (affirming grant of summary judgment on fair trial claim based on officer's alleged fabrication of information because plaintiff's allegations were speculative and not supported by any evidence); *Bellamy v. City of N.Y.*, No. 12 Civ. 1025 (AMD) (PK), 2017 WL 2189528, at *35 (E.D.N.Y. May 17, 2017) (granting summary judgment on denial of fair trial claim where "[t]he only evidence the plaintiff cites to support his claim that [defendant] lied about what the plaintiff said is his own denial that he made the statements").

Under the circumstances, I find that there is no material question of fact and Defendant is entitled to judgment as a matter of law regarding Plaintiff's fair trial claim.

## V.     Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED as to Plaintiff's claims for malicious prosecution and denial of the right to a fair trial, and DENIED as to Plaintiff's claim for false arrest.

The Clerk of Court is respectfully directed to terminate the open motion, (Doc. 52).

SO ORDERED.

Dated: August 22, 2018
         New York, New York

Vernon S. Broderick
United States District Judge